# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John O'Neil and Jill O'Neil, on behalf of
themselves and all others similarly situated,

                                   Plaintiffs,

                                                    Civ. No. 07-4070 (RHK/JJG)
                                                    **MEMORANDUM OPINION
                                                    AND ORDER**

v.

Simplicity, Inc., and Graco Children's
Products, Inc.,

                                   Defendants.

Elizabeth C. Pritzker, Eric H. Gibbs, Geoffrey A. Munroe, Girard Gibbs LLP, San
Francisco, California, Charles C. Kelly, II, Amy Eskin, Nancy Hersh, Hersh & Hersh,
San Francisco, California, Renae D. Steiner, Lori A. Johnson, Heins Mills & Olson, PLC,
Minneapolis, Minnesota, Michael K. Johnson, Goldenberg & Johnson, PLLC,
Minneapolis, Minnesota, for Plaintiffs.

William K. Hill, Scott N. Wagner, Bilzin Sumberg Baena Price & Axelrod LLP, Miami,
Florida, Blake Shepard, Todd A. Noteboom, Leonard, Street and Deinard, PA,
Minneapolis, Minnesota, for Defendant Simplicity, Inc.

Joseph J. Krasovec, III, Heidi Dalenberg, Holly A. Podulka, Schiff Hardin LLP, Chicago,
Illinois, John Edward Connelly, Jesseca R.F. Cockson, Faegre & Benson LLP,
Minneapolis, Minnesota, for Defendant Graco Children's Products, Inc.

## INTRODUCTION

This action arises out of a recall of children's cribs by Defendant Simplicity, Inc.

("Simplicity"). Plaintiffs John and Jill O'Neil purchased a Simplicity crib in 2003, which

bears the name and logo of Defendant Graco Children's Products, Inc. ("Graco"). The

crib was recalled in September 2007 due to problems with its "drop side"; this action was

commenced shortly thereafter, asserting a litany of claims.  Simplicity and Graco now move to dismiss.  For the reasons set forth below, the Court will grant the Motions.

## BACKGROUND

Simplicity has manufactured cribs since 1998.  (Second Amended Complaint ("SAC") ¶ 9.)  Simplicity sells its cribs under its own name and under those of several licensees, including Graco.  (Id. ¶ 10.)  Many of Simplicity's cribs (including the crib at issue here) include a "drop side," which allows one side of the crib to be raised and lowered to more easily place a child into (or remove a child from) the crib.  (Id. ¶ 11.)

In 2003, a consumer filed a complaint with the Consumer Product Safety Commission ("CPSC") concerning the drop side of a Simplicity crib.  (Id. ¶ 20.)  In February 2004, another consumer reported to the CPSC and Simplicity that the drop side of a Simplicity crib had separated from the crib frame, creating a gap between the frame and the drop side.  Simplicity allegedly told this consumer that "it was no big deal" and that "there were no problems with the crib."  (Id. ¶ 21.)  Then, on April 11, 2005, a nine-month-old boy suffocated while sleeping in a Simplicity crib when he slipped into a gap between the crib's drop side and its frame.  (Id. ¶ 22.)  The boy's parents reported the problem to the CPSC and sued Simplicity, which resolved the matter in a confidential settlement.  (Id.)  The problem kept recurring, however; at least two more infants suffocated while sleeping in Simplicity cribs due to gaps between the drop sides and the cribs' frames, and the CPSC received reports of at least 63 "incidents" with Simplicity cribs, seven of which involved injuries suffered when infants became trapped between a crib's frame and its drop side.  (Id. ¶¶ 23-24.)

In 2007, the Chicago Tribune commenced an investigation into Simplicity's cribs and shared the results of its investigation with the CPSC and with Simplicity and Graco. (Id. ¶ 25.)  On September 21, 2007, the cribs were recalled by the CPSC and Simplicity. (Id.)  As part of the recall, Simplicity is not accepting returns of the cribs.  Rather, it is offering to send new hardware (the "Retrofit Kit"), along with instructions explaining how to install it, which can be used to immobilize the drop sides of the cribs.  (Id. ¶ 30.)

This purported class action was originally filed by Amber Spitzer on September 24, 2007, three days after the recall was announced.  Spitzer alleged that she had bought a defective crib manufactured by Simplicity and bearing the Graco name and logo at a Target store in April 2006.  She named as Defendants Simplicity, Graco, and Target, and asserted claims arising under contract law (breach of warranty, unjust enrichment) and tort law (negligence).  She also asserted claims under several Minnesota consumer-protection statutes, alleging that the Defendants were aware of the defects in the cribs but nevertheless continued to market them as "safe."  After Target and Simplicity moved to dismiss, Spitzer moved for and was granted leave to file a Second Amended Complaint.[1] The Second Amended Complaint differed greatly from the original Complaint – the O'Neils took Spitzer's place as the named plaintiffs, and Target was dismissed as a Defendant.

The O'Neils purchased an "Aspen 3 in 1" crib manufactured by Simplicity and bearing the Graco name and logo from a Target store in Virginia, Minnesota in 2003. (Id. ¶ 33.)  They purchased the crib for the use of their grandchildren during visits to their

---

[1] Spitzer previously had filed an Amended Complaint, which dropped the negligence claim.

home.  (Id.)  The O'Neils used the crib without problems until September 2007, when they learned of the recall.  (Id. ¶ 34.)  They have stopped using the crib altogether, and they have not ordered the Retrofit Kit because "the crib is useless to them without a functional drop side.  Ms. O'Neil cannot lift an infant up and over the side of the crib without first lowering the drop side, so could not use the Crib with the retrofit kit installed and the drop side immobilized."  (Id. ¶¶ 35-36.)

Like Spitzer, the O'Neils claim that Defendants were aware that their cribs were unsafe but continued to market and sell them.  They also claim that Defendants unlawfully marketed their cribs as having a functional drop side when they knew that the cribs could not safely function without the drop side immobilized.  They assert eight claims in the SAC:  (1) declaratory judgment, seeking a judicial determination that the cribs are defective and that Simplicity must repair or replace them with cribs having fully functional drop sides; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"); (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) violation of Minnesota's Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44; (6) violation of Minnesota's Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.68; (7) violation of Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67; and (8) unjust enrichment.  The O'Neils purport to represent a class of "all persons in Minnesota who purchased" a Simplicity/Graco crib in several different crib lines manufactured by Simplicity.  (Id. ¶ 37.)  The class expressly *excludes* any individual who suffered a personal injury while using an allegedly defective crib.  (Id. ¶ 38.)

Simplicity and Graco now move to dismiss.[2]

## STANDARD OF DECISION

The recent Supreme Court case of <u>Bell Atlantic Co. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 1974.  Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 1964-65 (citation omitted).  Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery."  <u>Id.</u> at 1968 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible."  <u>Id.</u> at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  <u>Id.</u> at 1964-65.  A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein.  <u>Id.</u>  Accordingly, a well-pleaded complaint will survive a

---

[2]  Shortly before oral argument on the instant Motions, Simplicity's counsel informed the Court that (1) Simplicity had defaulted under a secured-credit agreement with its largest creditor, (2) the creditor had effected a sale of substantially all of Simplicity's assets, and (3) Simplicity has ceased all business operations.  As a result, although the Court concludes that the O'Neils' claims must be dismissed, it appears that they (and the class they purport to represent) would be unlikely to recover from Simplicity even if their claims were able to survive Simplicity's and Graco's Motions.

motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at

1965 (citation omitted).

## ANALYSIS

Simplicity and Graco raise a host of arguments in support of their Motions, but the

Court need only address one, which it finds dispositive:  have the O'Neils asserted a

legally cognizable injury?  The Court concludes that they have not.[3]

The crux of Defendants' argument is that the O'Neils' crib has never

malfunctioned.  There is no allegation in the SAC indicating that the O'Neils' crib has

ever had a problem with its drop side or that it has ever failed to work as intended; they

simply point to the fact that the crib has been recalled because some consumers owning

the same model (or similar models) have experienced drop-side problems.  According to

Defendants, these facts bring this case within the line of "no injury" product-liability

cases "where the plaintiff alleges a defect that <u>could</u> cause injury or might create a safety

hazard, but fails to allege any actual harm."  (Simplicity Mem. at 7 (emphasis in

original).)  In the absence of any such harm, Defendants argue that the O'Neils cannot

state a claim under any legal theory advanced in the SAC.[4]

---

[3] Although it raised several arguments in support of its Motion, Graco did not expressly move to dismiss on this ground.  Nevertheless, the Court's analysis applies with equal force with respect to Graco.  Moreover, at the hearing on the instant Motions, Graco made clear that it was adopting all of Simplicity's arguments, and the O'Neils responded to the no-cognizable-injury argument (at both the hearing and in their Motion papers) as if it had been brought by both Simplicity and Graco.

[4] The O'Neils have nowhere argued that they need not prove legally cognizable damages as an element of each of their claims, and hence they have conceded the point.  Other than with respect to the declaratory-judgment claim and the DTPA claim, the case law supports the O'Neils' implicit concession.  See 15 U.S.C. § 2310(d)(1) (MMWA requires plaintiff to be "damaged by the failure of a . . . warrantor"); Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (breach-of-warranty claim requires damages); LensCrafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1491 (D. Minn. 1996) (Davis, J.) (claim under FSAA requires damages); Minn. Stat. § 8.31, subd. 3a (private actions for violation of CFA and FSAA require a person to be "injured by a violation" thereof);

Several cases have adopted the argument pressed by Defendants.  For example, in

Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002), the plaintiff had

ingested Duract, a prescribed non-steroidal anti-inflammatory drug manufactured by the

defendant.  Although the plaintiff had used Duract without problems, and although the

plaintiff had nowhere argued that Duract was ineffective as a pain killer or caused future

health consequences for users, she sued the defendant after it removed the drug from the

market due to reports of liver failures among some users.  The class-action plaintiff –

who, like the O'Neils here, expressly disclaimed representing any individuals who had

suffered personal injuries from Duract – alleged violations of the Texas Deceptive Trade

Practices Act and the implied warranty of merchantability, as well as a claim for unjust

enrichment.  The district court certified the case as a class action under Federal Rule of

Civil Procedure 23, and the defendant took an interlocutory appeal of that decision to the

Fifth Circuit.  The appellate court reversed and remanded with instructions to dismiss the

case because the plaintiff had not pleaded damages sufficient to support her claims:

> Notably, the wrongs Rivera and the class allege are those suffered by other,
> non-class member patients.  The plaintiffs claim that Wyeth violated the
> implied warranty of merchantability by selling a defective drug, but then
> aver that the drug was not defective as to them.  Similarly, the plaintiffs

---

Park-Lake Car Wash, Inc. v. Springer, 394 N.W.2d 505, 514 (Minn. Ct. App. 1986) (unjust enrichment requires plaintiff to show defendant enriched himself "at the expense of another").

As for the declaratory-judgment claim, which seeks a determination that Simplicity "is obligated under its Limited Warranty to repair or replace Class members' unsafe and defective Cribs" (SAC ¶ 50), the Court concludes that the claim should be dismissed because it is duplicative of the breach-of-warranty claim.  See, e.g., Alsager v. Dist. Court of Polk County, Iowa (Juvenile Div.), 518 F.2d 1160, 1163 (8th Cir. 1975) (district courts have discretion to decline to hear declaratory-judgment claims; claim should be entertained only "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue"); Ticketmaster L.L.C. v. RMG Techs., Inc., 536 F. Supp. 2d 1191, 1199 (C.D. Cal. 2008) (dismissing as duplicative declaratory-judgment claim where issues raised therein would be resolved in other claims alleged in case).  And, with respect to the DTPA claim, damages are not at issue because "the sole statutory remedy for deceptive trade practices is injunctive relief."  Gardner v. First Am. Title Ins. Co., 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (Kyle, J.) (citing Dennis Simmons D.D.S., P.A. v. Modern Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App. 1999)).

claim Wyeth violated the DTPA by failing to issue warnings sufficient to advise injured users, but then concede they were not among the injured. Such wrongs cannot constitute an injury in fact.

283 F.3d at 320.[5]

Similarly, in Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999), the Eighth Circuit affirmed the dismissal of a multi-district litigation proceeding concerning anti-lock brakes on General Motors cars.  The Briehl plaintiffs alleged that their brakes were defective because their brake pedals would fall completely to the floor in hard braking, which caused drivers to release the pedals due to a perception of total brake failure.  The plaintiffs did not allege that the brakes were incapable of stopping their vehicles in emergencies, nor did they allege that their brakes had actually caused any accidents.  Indeed, as in Rivera (and as in this case), the named plaintiffs did not seek to represent any individuals who had sustained personal injuries or property damage as a result of the alleged defect.

General Motors moved to dismiss, arguing that the plaintiffs had not suffered any injuries sufficient to support their claims for breach of warranty, violations of various state consumer-protection statutes, and fraudulent concealment and misrepresentation. The district court granted that motion, and the Eighth Circuit affirmed, noting:

> In this case, the Plaintiffs have not alleged that their ABS brakes have malfunctioned or failed.  In fact, the Plaintiffs affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure.  The Plaintiffs' ABS brakes have functioned satisfactorily and at no time have the brakes exhibited a defect.  Under each of the theories the Plaintiffs invoke in the Original Complaint, damages

---

[5] Rivera's discussion of damages arose in the standing context, but the Court perceives no reason why its analysis is not equally apt here.

> constitutes an essential element of the cause of action.  Where, as in this
> case, a product performs satisfactorily and never exhibits an alleged defect,
> no cause of action lies.  Since the Plaintiffs have failed to allege any
> manifest defect and their vehicles perform in a satisfactory manner, the
> District Court was correct when it dismissed the Plaintiffs' Original
> Complaint.

172 F.3d at 628 (citations omitted).  Numerous other courts have adopted this "no injury"

rationale and dismissed claims where a product defect was alleged to exist but had not

manifested itself in the plaintiffs' products.  See, e.g., Harrison v. Leviton Mfg. Co., No.

05-CV-0491, 2006 WL 2990524, at *4-7 (N.D. Okla. Oct. 19, 2006) (concerning

defective electrical outlets that allegedly could overheat and cause fires; "Courts do not

allow consumers to bring claims against manufacturers for products that are perceived to

be harmful, but that have not actually cause[d] an identifiable injury."); Feinstein v.

Firestone Tire & Rubber Co., 535 F. Supp. 595, 602-03 (S.D.N.Y. 1982) (no claim under

MMWA where alleged tire defect had not manifested itself; "Liability does not exist in a

vacuum; there must be a showing of some damage"); Carey v. Select Comfort Corp., No.

27CV 04-15451, 2006 WL 871619, at *2-5 (Minn. Dist. Ct. Jan. 30, 2006) (involving

allegedly defective bed that trapped moisture and caused mold growth; court dismissed

plaintiff's claims for breach of express and implied warranties and violations of the

DTPA, CFA, and FSAA because no mold had grown on the plaintiff's bed).[6]

The O'Neils attempt to evade these holdings by arguing that "the crib they

purchased has a serious defect in that the original hardware sold with the crib renders it

unsafe for their grandchildren to sleep in."  (Mem. in Opp'n to Simplicity Mot. at 7-8.)

---

[6] See also Briehl, 172 F.3d at 627-28 (collecting cases); Heindel v. Pfizer, Inc., 381 F. Supp. 2d 364, 379-81 (D.N.J. 2004); Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171, 176 (D.D.C. 2003); In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 68 (S.D.N.Y. 2002).

This allegation parallels those made in <u>Briehl</u> (faulty brakes rendered cars unsafe), <u>Harrison</u> (faulty outlets made home unsafe), <u>Feinstein</u> (defective tires rendered cars unsafe), and the plethora of other "no injury" cases set forth above and decided by courts across the country.  It is simply not enough for a plaintiff to allege that a product defect suffered by others renders his or her use of that same product unsafe; the plaintiff must instead allege an *actual manifestation* of the defect *that results in some injury* in order to state a cognizable claim for breach of warranty, unfair trade practices, or unjust enrichment.  <u>Briehl</u>, 172 F.3d at 628 ("Where . . . a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies."); <u>In re Air Bag Prods. Liab. Litig.</u>, 7 F. Supp. 2d 792, 803-04 (E.D. La. 1998) (even where an alleged defect creates a "life-threatening condition," the absence of a manifestation of that defect causing injury "is so fundamental a deficiency in tort or implied warranty claims that such claims are more appropriately dismissed than preserved").[7]

The O'Neils apparently believe that the mere fact Simplicity has recalled the cribs, based on *others* encountering problems, necessarily means that their crib has a "manifest" defect.  (<u>See</u> Mem. in Opp'n to Simplicity Mot. at 6-7.)  The Court does not agree with

---

[7] The Court further notes that the "defect" in the O'Neils' crib is one of their own making.  Simplicity has made a Retrofit Kit available to them, but they have opted not to install it.  And, there is no allegation in the SAC that the Retrofit Kit would not completely "fix" the "problem" with their crib.  The O'Neils *claim* that they have alleged that the "retrofit hardware prevents their safe use of the crib because consumers cannot safely and conveniently lift children over the full-height side of the crib once the retrofit kit is installed and in place."  (Mem. in Opp'n to Simplicity Mot. at 8 (citing SAC ¶¶ 34-36).)  A careful review of the cited paragraphs of the SAC, however, reveals no such allegation.

The O'Neils also assert that the Retrofit Kit "replaces one defect with another: once the drop side is immobilized, [the] crib[] [will] no longer function as represented" because it will no longer include one of the main components of its functionality.  (Mem. in Opp'n to Simplicity Mot. at 2.)  Because the O'Neils have opted not to install the Retrofit Kit, however, they cannot assert a claim concerning the loss of drop-side functionality, nor would they be adequate class representatives for individuals claiming such a "defect."

that supposition.  In <u>Rivera</u>, <u>Harrison</u>, and <u>Feinstein</u>, for example, persons other than the plaintiffs had encountered problems with the products at issue.  Yet, in each case the court concluded that the plaintiff did not state a cognizable claim because the named plaintiff's own product had not manifested any defect resulting in an actual injury.[8]  The same is true here, where the O'Neils have not alleged that they have encountered any problems with their crib's functionality.  That the crib has been recalled, therefore, does not *ipso facto* mean that the crib has a manifest defect sufficient to permit their claims to proceed.

The O'Neils next argue that they paid for a safe crib with a functioning drop side and instead got a crib with a drop side that must be locked into place in order to render the crib safe to use.  (Mem. in Opp'n to Simplicity Mot. at 8-12.)  In other words, they argue that they have suffered "benefit-of-the-bargain" damages – that is, they were damaged in an amount equal to the difference between what they bargained for (a safe crib with a functioning drop side) and what they received (a crib without one).  Although this argument has some superficial appeal, the Court finds that it, too, is unpersuasive.[9]

It is true that some courts have recognized "benefit-of-the-bargain" damages as sufficient to support deceptive-trade-practices and breach-of-warranty claims.  For example, in <u>Coghlan v. Wellcraft Marine Corp.</u>, 240 F.3d 449 (5th Cir. 2001), the plaintiffs had purchased a boat manufactured by the defendant.  The plaintiffs'

---

[8] Notably, the drug at issue in <u>Rivera</u> had been recalled by the defendant.

[9] Although it is not germane to the Court's resolution of the instant Motions, the Court notes that, by seeking benefit-of-the-bargain damages, the O'Neils likely have rendered their case inappropriate for class-action treatment. In order to prove whether purchasers received the benefit of their bargains, individualized proof would be required concerning a host of issues, including whether, and to what extent, each purchaser chose a crib solely due to its use of a drop side, and the amount paid by each purchaser.

motivation for the purchase, in part, was the defendant's advertising emphasizing that its boats were made completely of fiberglass, which were (1) more durable than boats made of a wood-fiberglass combination and (2) perceived to hold their value better.  A few months after the purchase, however, the plaintiffs discovered that their boat was actually made of both wood and fiberglass.  They sued the manufacturer, asserting *inter alia* claims for violations of the MMWA, breach of implied warranty, unfair and deceptive trade practices, and unjust enrichment.  The defendant moved to dismiss certain of the claims in the complaint, but the district court dismissed the *entire* complaint for failing to allege any cognizable damages.  The plaintiffs appealed.

The Fifth Circuit reversed.  In the portion of its holding most pertinent here, the court stated:

> The key distinction between this case and a "no-injury" product[s] liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product[s] liability:  the Coghlans assert they were promised one thing but were given a different, less valuable thing.  The core allegation in a no-injury product[s] liability class action is essentially the same as in a traditional products liability case:  the defendants produced or sold a defective product and/or failed to warn of the product's dangers.  The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce.  In contrast, the wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and to deliver what was promised.  The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it.  Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss.  Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain.

240 F.3d at 455 n.4.  Other courts have followed <u>Coghlan</u>'s approach and permitted

warranty and deceptive-trade-practices claims to proceed based on benefit-of-the-bargain

damages.  <u>See, e.g.</u>, <u>In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.</u>, 155 F.

Supp. 2d 1069, 1102-03 (S.D. Ind. 2001); <u>Microsoft Corp. v. Manning</u>, 914 S.W.2d 602,

607-10 (Tex. App. 1995), <u>abrogated on other grounds by</u> <u>Citizens Ins. Co. of Am. v.

Daccach</u>, 217 S.W.3d 430 (Tex. 2007); <u>Miller v. William Chevrolet/GEO, Inc.</u>, 762

N.E.2d 1, 10-11 (Ill. App. Ct. 2001).

 Yet, this approach has not been universally adopted – indeed, the Fifth Circuit

rejected this theory of damages (and distinguished <u>Coghlan</u>) in <u>Rivera</u>.  Noting the

difference between contract-law and tort-law damages discussed in footnote 4 in

<u>Coghlan</u>, the <u>Rivera</u> court stated:

> Even if we were to ignore the fact that plaintiffs have no contract, the
> general principles they invoke do not help them.  By plaintiffs' own
> admission, Rivera paid for an effective pain killer, and she received just
> that – the benefit of her bargain. . . . The confusion arises from the
> plaintiffs' attempt to recast their product liability claim in the language of
> contract law.  The wrongs they allege – failure to warn and sale of a
> defective product – are products liability claims.  Yet, the damages they
> assert – benefit of the bargain, out of pocket expenditures – are contract law
> damages.  The plaintiffs apparently believe that if they keep oscillating
> between tort and contract law claims, they can obscure the fact that they
> have asserted no concrete injury.  Such artful pleading, however, is not
> enough to create an injury in fact.

283 F.3d at 320-21 (citations omitted); <u>accord</u> <u>Carlson v. Gen. Motors Corp.</u>, 883 F.2d

287, 297-98 (4th Cir. 1989) (affirming dismissal of MMWA and breach-of-implied-

warranty claims based on "lost resale value" of plaintiffs' vehicles); <u>Carey</u>, 2006 WL

871619, at *3-5.

More importantly, the Eighth Circuit concluded in <u>Briehl</u> that benefit-of-the-bargain damages do not cut the mustard for the types of claims at issue here.  In <u>Briehl</u>, the plaintiffs claimed that due to the alleged defect, they had overpaid for their vehicles when they purchased them.  172 F.3d at 626.  The court concluded that such damages were "insufficient as a matter of law to plead a claim under any theory the Plaintiffs ha[d] advanced," including claims for breach of express and implied warranties and deceptive trade practices under several states' laws.  <u>Id.</u> at 629.  The Court is obliged to follow <u>Briehl</u> here.[10]

An additional flaw is evident in the O'Neils' benefit-of-the-bargain damages theory.  The purported benefit of the O'Neils' "bargain" was a crib with a functioning drop side.  However, they cannot complain that they received less than what they bargained for – that is, they cannot claim they received a crib without a functioning drop side – when their drop side has functioned without incident since it was purchased over four years ago and they have opted not to install the Retrofit Kit to lock the drop side into place.  Simply put, the O'Neils bargained for a crib with a functioning drop side, and that is precisely what they received.  "[A] plaintiff who purchases a [crib] that never malfunctions over its ordinary period of use cannot be said to have received less than what he bargained for when he made the purchase."  <u>In re Canon Cameras Litig.</u>, 237 F.R.D. 357, 360 (S.D.N.Y. 2006).  The O'Neils' benefit-of-the-bargain damages theory,

---

[10]  The O'Neils assert that "the plaintiffs in <u>Briehl</u> never alleged that [they] received less than they bargained for" (Mem. in Opp'n to Simplicity Mot. at 7), but that assertion is inaccurate.  The <u>Briehl</u> plaintiffs specifically "claim[ed] damages . . . for (1) lost resale value and (2) overpayment for the vehicles at the time of purchase."  172 F.3d at 626.  While perhaps not explicitly stating that they had "received less than they bargained for," the plaintiffs alleged substantively the same thing by asserting that they overpaid as a result of the alleged defect.

therefore, does not aid their cause.  And, having failed to allege any cognizable damages, their claims falter.[11]

It could be argued that the lack of cognizable damages is not fatal to certain of the O'Neils' claims – specifically, the DTPA, CFA, and FSAA claims – insofar as the O'Neils also seek injunctive relief on those claims.  That is of no moment, however, because the O'Neils have not pleaded in the SAC any basis for an award of such relief.[12] They argue that injunctive relief is proper to "prevent future child injuries or deaths" (Mem. in Opp'n to Simplicity Mot. at 26), but there are two flaws with this argument. First, the O'Neils have nowhere pleaded in the SAC that the allegedly defective cribs are still being marketed or sold.  Indeed, the SAC's use of past tense in each of the O'Neils' claims suggests that Defendants' alleged misconduct is not ongoing.  (See, e.g., SAC ¶ 81 ("Defendants . . . *made* misleading or deceptive representations concerning the Cribs, and *concealed* from or *failed* to disclose the fact that in order to be safe the consumer would have to lose drop-side functionality.") (emphasis added); id. ¶ 91 ("Defendants *used* misrepresentations, misleading statements, and deceptive practices . . . .") (emphasis

---

[11] Notably, the Court does not believe Briehl stands for the proposition that benefit-of-the-bargain damages are *never* sufficient to state a claim under state consumer-protection statutes or for breach of warranty.  For example, imagine a situation in which a seller fraudulently misrepresents that an object is a diamond when it is actually glass. The buyer in such a situation would have incurred only benefit-of-the-bargain damages – he thought he was buying a valuable diamond, and instead got something worthless – and he would likely be able to state a valid claim under the CFA or the FSAA in such a situation.  What distinguishes the case at bar from this hypothetical is that, under the O'Neils' theory of damages, a functioning crib is worth less than anticipated *only if* its purchaser opts to lock the drop side into place.  Insofar as the O'Neils have never done so, they cannot claim that they received less than what they bargained for.

[12] It is not entirely clear in the first instance whether the O'Neils, as private parties, may seek injunctive relief under either the CFA or the FSAA, particularly where they have not suffered any cognizable damages.  See Lofquist v. Whitaker Buick-Jeep-Eagle, Inc., No. C5-01-767, 2001 WL 1530907, at *1 (Minn. Ct. App. Dec. 4, 2001) (expressly declining to answer this question under the CFA).  The Court need not address this issue because even assuming *arguendo* that injunctive relief is available, Plaintiffs have not pleaded facts indicating that such relief would be appropriate.

added).)  Were it otherwise, the O'Neils would have (and should have) alleged that "Defendants made *and are continuing to make* misleading or deceptive representations" or "Defendants used *and are still using* misrepresentations."[13]  Second, the O'Neils expressly disclaimed representing any person who has suffered a personal injury as a result of a "defective" crib.  An injunction intended to prevent "future child injuries and death," therefore, is beyond the scope of the claims asserted in the SAC.  Accordingly, the fact that the O'Neils seek injunctive relief on their consumer-protection claims does not save those claims from dismissal.

For all the foregoing reasons, the Court concludes that the SAC must be dismissed.  That leaves the Court with one additional question:  should the dismissal be with or without prejudice?  In answering that question, the Court notes that Plaintiffs' counsel have had three bites at the pleading apple:  the original Complaint, followed by two subsequent Amended Complaints.  Moreover, although the original Complaint was amended before any response was filed, Simplicity moved to dismiss the First Amended Complaint on the ground that there were no alleged cognizable damages.  (See Doc. No. 18 at 7-13.)  In other words, the defect that the Court has discussed above – which is fatal to the claims alleged in the SAC – was laid bare by Simplicity well before the SAC was filed.

---

[13] The CPSC's recall notice – which the Court may consider in ruling on Defendants' Motions because it is referenced throughout the SAC, see Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) – also suggests that the cribs at issue are no longer being sold.  See http://www.cpsc.gov/CPSCPUB/PREREL/prhtml07/07307.html (last visited May 8, 2008) (indicating that recalled cribs "were sold in department stores, children's stores and mass merchandisers nationwide from January 1998 *through May 2007*") (emphasis added).  And, as noted above, Simplicity apparently is no longer in business.

The claims alleged in this case do not arise out of a complicated area of the law, such as securities litigation, where "the drafting of a cognizable complaint can be a matter of trial and error." Eminence Capital v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Rather, this is a straight-forward product-defect case. The Court believes that there have been "ample opportunities to research and plead" sufficient claims here. In re Career Educ. Corp. Sec. Litig., No. 03 C 8884, 2007 U.S. Dist. LEXIS 23635, at *36 (N.D. Ill. Mar. 29, 2007). "[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." Schiller v. Physicians Res. Group Inc., 342 F.3d 563, 567 (5th Cir. 2003) (citation omitted). This is such a case, and that time has come.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motions to Dismiss (Doc. Nos. 56, 59) are **GRANTED** and Plaintiffs' Second Amended Complaint (Doc. No. 46) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 12, 2008

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge